**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 26-21281-LSS** |
| **ONE ALKALINE LIFE, LLC,** | ) | **Chapter 11** |
| **Debtor.** | ) | **Subchapter V** |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

One Alkaline Life, LLC (the "**Debtor**"), as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Case**"), by its undersigned proposed counsel, hereby submits this *Motion for Interim and Final Orders Authorizing Use of Cash Collateral and Granting Adequate Protection* (the "**Motion**"), and in support thereof states as follows:

**Bankruptcy Rule 4001(b)(1) Introductory Statement**

1. The Debtor is a mental health clinic and holistic wellness center headquartered in Waldorf, Maryland. The Debtor employs licensed therapists, counselors, and other professionals to treat a variety of mental health disorders, such as depression, ADHD, and anxiety. In addition to behavioral health care, the Debtor provides wellness services, including massages and weight loss support.

2. It is the Debtor's goal and expectation in filing this case to continue its operations and reorganize its affairs through confirmation of a plan of reorganization, so it can continue to treat and care for its patients and their families. Accordingly, the use of cash collateral in the form of existing cash to fund the Debtor's business operations and preserve its value as a going concern is in the best interest of all creditors and parties in interest.

3. By this Motion, the Debtor requests the entry of interim and final orders authorizing the Debtor to, among other things, use the cash collateral of the secured creditors outlined in this motion (collectively, the "**Secured Creditors**"), pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), in accordance with the cash collateral budget (the "**Budget**") attached hereto as **Exhibit A**.

4. The Debtor and the Secured Creditors have not as of this date agreed to terms for the interim use of cash collateral. The material provisions proposed by the Debtor for its use of cash collateral (the "**Cash Collateral**") are set forth in the following sections of the proposed interim order (the "**Interim Order**"), attached hereto as **Exhibit B**, granting the relief sought herein:

a. Debtor. One Alkaline Life, LLC.

b. Secured Creditors. Top Choice Financial, LLC; Credibly of Arizona, LLC; E Advance Services, LLC; Marlin Leasing Corp; FundGate LLC; 1st Alliance Group LLC; Headway Capital LLC.

c. Use of Cash Collateral. The Debtor proposes its interim use of Cash Collateral to the extent and in amounts substantially similar to those set forth in the Budget. The Debtor will use Cash Collateral solely to maintain and operate its business and pay the Debtor's post-petition obligations as and when they come due.

d. Duration of the Use of Cash Collateral. The Debtor requests authority to use Cash Collateral in accordance with the Budget pending a final hearing and thereafter for the duration of the Case pursuant to a final order of this Court.

e. Adequate Protection. Replacement liens on the Debtor's post-petition and the proceeds thereof, to the same extent, priority, and validity as their respective pre-petition liens (if any), but only to the extent of any diminution in value of the Secured Creditors' respective interests in their collateral. The replacement liens shall not attach to any causes of action arising under chapter 5 of the Bankruptcy Code. The Debtor reserves the right to challenge the liens and claims of the Secured Creditors, and nothing herein shall be construed as an admission of the Debtor regarding the validity, extent, priority, or perfection of any claim or lien asserted by a Secured Creditor.

f. Waiver of Applicable Nonbankruptcy Law Relating to Perfection on Property of the Estate. The Interim Order is deemed to be sufficient and conclusive evidence of the priority, perfection, and validity of the post-petition liens and security interests granted therein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording or possession of the subject collateral, or other act to validate or perfect such security interest or lien.

g. Relief from Automatic Stay. The automatic stay provisions of section 362 of the Bankruptcy Code are modified and vacated to the extent necessary to permit the Secured Creditors to perform any act authorized or permitted under the Interim Order, including, without limitation, to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Secured Creditor's respective collateral.

h. Any replacement lien granted pursuant to the Interim Order shall be valid only to the extent permitted under the Bankruptcy Code and shall be subject to any determination that a prepetition lien was unperfected, avoidable, unenforceable, subordinate, or otherwise invalid.

5. As stated above, the Debtor intends to continue its operations as a going concern to repay its creditors. As a result, the Debtor requires the use of cash collateral to maintain its operations in the ordinary course of business through confirmation of a plan of reorganization.

## Jurisdiction

6. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 11 U.S.C § 157(b)(2). Venue of this Case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The relief sought by this Motion is based upon sections 105(a), 361, 362, and 363(c) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 4001 and 9014.

## The Chapter 11 Proceeding

8. On October 13, 2026 (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under chapter 11, subchapter V of the Bankruptcy Code, commencing

this Case. The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1182 and 1184 of the Bankruptcy Code.

**The Debtor And Its Business Operations**

9. The Debtor is a limited liability company organized under the laws of Maryland. The Debtor operates a mental health clinic headquartered in Waldorf, Maryland.

10. The Debtor employs licensed therapists, counselors, and other professionals to treat a variety of mental health disorders, such as depression, ADHD, and anxiety. In addition to behavioral health care, the Debtor provides wellness services, including massages and weight loss support.

11. The Debtor currently employs forty-three (43) employees. There are approximately three hundred seventy-one (371) patients of the Debtor.

**Prepetition Secured Obligations**

12. The Debtor's existing pre-petition secured indebtedness is comprised primarily of merchant cash advance lenders.

13. Upon information currently available, each Secured Creditor asserts a lien against certain assets of the Debtor. The Debtor is continuing its investigation regarding the nature, extent, priority, validity, and perfection of such asserted liens and reserves all rights with respect thereto.

14. Nothing contained in this Motion, the Interim Order, or any Final Order shall constitute (a) an admission by the Debtor regarding the validity, extent, priority, perfection, enforceability, or amount of any claim or lien asserted by any Secured Creditor; (b) a waiver of any claim, defense, counterclaim, objection, or avoidance action; (c) a stipulation that any asset constitutes cash collateral; or (d) a waiver of any rights under the Bankruptcy Code or applicable non-bankruptcy law.

**Relief Requested**

15. The Debtor requires the use of the Cash Collateral in order to continue to operate, preserve, and maintain the going concern value of its business. Unless the Debtor is permitted to use Cash Collateral, it will be irreparably harmed because it will be unable to operate and manage its business, care for its patients, and preserve and maintain the going concern value. The Debtor requires the use of Cash Collateral for the payment of, among other things, operating expenses including payroll, as more fully set forth in the Budget.

**Legal Basis for Use of Cash Collateral**

16. Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral unless the entity with an interest in the cash collateral consents or the court authorizes such use. Further, pursuant to section 363(c) of the Bankruptcy Code and Bankruptcy Rule 4001(b), the Court may conduct a preliminary hearing and authorize the use of cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing on the merits of the Motion.

17. The Debtor seeks the entry of interim and final orders allowing the use of the Cash Collateral to avoid irreparable harm to the estate. The Debtor's liquidity needs can be satisfied only if the Debtor is authorized to continue to use cash collateral in the manner set forth in the proposed Budget and Interim Order. The Debtor's use of Cash Collateral consisting of existing revenue generated from the operation of its business in accordance with the Budget is fair and reasonable, and will enable the Debtor to continue operations and continue to pursue its goal of reorganizing the business.

**The Proposed Adequate Protection Should be Authorized**

18. Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used ... or proposed to be used ... by [a debtor in possession], the court, with or without a hearing, shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest." Section 361 of the Bankruptcy Code sets forth the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. What constitutes adequate protection must be decided on a case-by-case basis. *See In re O'Connor,* 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin,* 761 F.2d 472, 474 (8th Cir. 1985); *Shaw Indus. v. First Nat'l Bank (In re Shaw Indus., Inc.),* 300 B.R. 861, 865-66 (Bankr. W.D. Pa. 2003) (*quoting In re Sharon Steel Corp.*, 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993)). The requirement is intended to protect a secured creditor from the diminution of the value of its interest in the particular collateral during the period of use. *See In re Swedeland Bev. Group, Inc.,* 16 F.3d 552, 564 (3d Cir. 1994) (recognizing that new protections might be sufficient for "the whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy") (citation omitted).

19. The adequate protection provided under the proposed Interim Order granting replacement liens to the Secured Creditors on the post-petition assets of the Debtor pursuant to section 361 of the Bankruptcy Code, subject to all pre-existing liens and only to the extent of any diminution in the value of each respective Secured Creditor's interest in Cash Collateral, is fair and reasonable under the circumstances.

20. The Secured Creditors' replacement liens will not attach to chapter 5 causes of action or the proceeds thereof. The Debtor reserves the right to challenge the purported liens and claims of the Secured Creditors, including the extent, validity, priority, perfection, and enforceability of any lien or claim asserted by a Secured Creditor.

21. Additional adequate protection is provided to the Secured Creditors through the continued operations of the Debtor's business. The Debtor's failure to continue to operate its business might result in the resignation of its employees and the unenrollment of its present patients, which would negatively impact the value of the Debtor's business. Furthermore, the Secured Creditors may be provided such additional adequate protection as the Court determines is appropriate.

**The Automatic Stay Should Be Modified on a Limited Basis**

22. The relief requested herein contemplates a modification of the automatic stay, to the extent applicable, to permit the Debtor to grant the replacement liens described above with respect to the Secured Creditors and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens.

23. Stay modifications of this kind are ordinary and standard features for the use of cash collateral, and in the Debtor's business judgment, are reasonable and fair under the present circumstances.

**Interim Approval Should Be Granted**

24. Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

25. Pursuant to Bankruptcy Rules 4001(b) and (c), the Debtor requests that the Court conduct a preliminary hearing on the Motion and (a) authorize the Debtor to use Cash Collateral on an interim basis, pending entry of a final order, in order to maintain and finance the ongoing

operations of the Debtor, and avoid immediate and irreparable harm to the Debtor's estate and all parties in interest, and (b) schedule a hearing to consider entry of a final order.

26. Because the Debtor requires the use of its cash to continue to operate, without authorization from the Court to use Cash Collateral on an interim basis pending a final hearing on the Motion, the Debtor will be immediately and irreparably harmed. The availability of Cash Collateral to the Debtor will provide necessary assurance to the Debtor's employees and patients that the Debtor has the ability to meet its obligations. Failure to meet these obligations and to provide these assurances would have a negative impact on the Debtor's business to the detriment of all parties in interest. Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of the Debtor's business.

## Notice

27. No trustee, examiner or creditors' committee has been appointed in this case. The Debtor is serving notice of this Motion on the following parties and their counsel, if known: (a) the Office of the U.S. Trustee, (b) all creditors on the creditor matrix, (c) all taxing authorities, and (d) any party requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

28. Pursuant to Local Bankruptcy Rule 9013-2, Debtor states that no supporting memorandum shall be filed and Debtor relies solely on the Motion.

**WHEREFORE**, the Debtor requests that the Court (a) enter an Order authorizing the interim use of Cash Collateral as reflected in the Budget; (b) schedule a final hearing on the Motion; and (c) grant such other and further relief as is just and appropriate under the circumstances.

Dated: October 13, 2026

Respectfully submitted,

*/s/ Lawrence A. Katz*

Lawrence A. Katz (Bar No. 02526)
HIRSCHLER FLEISCHER, P.C.
1676 International Drive, Suite 1350
Tysons, VA 22102
Telephone: (703) 584-8900
Facsimile: (703) 584-8901
Email: lkatz@hirschlerlaw.com

*Proposed Counsel for the Debtor*

**EXHIBIT A**

**(Budget)**

| Line | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | 13-week total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week start** | 2026-10-11 | 2026-10-18 | 2026-10-25 | 2026-11-01 | 2026-11-08 | 2026-11-15 | 2026-11-22 | 2026-11-29 | 2026-12-06 | 2026-12-13 | 2026-12-20 | 2026-12-27 | 2027-01-03 | |
| **Opening cash — Operating Account** | **$10,000** | **$88** | **$14,529** | **$10,973** | **$29,324** | **$4,476** | **$32,403** | **$16,139** | **$33,362** | **$10,082** | **$38,009** | **$20,617** | **$38,968** | **$10,000** |
| **RECEIPTS** | | | | | | | | | | | | | | |
| Receipts — Patient Services / Revenue | $41,750 | $41,750 | $41,750 | $41,750 | $41,750 | $41,750 | $41,750 | $41,750 | $41,750 | $41,750 | $41,750 | $41,750 | $41,750 | $542,750 |
| **Total receipts** | **$41,750** | **$41,750** | **$41,750** | **$41,750** | **$41,750** | **$41,750** | **$41,750** | **$41,750** | **$41,750** | **$41,750** | **$41,750** | **$41,750** | **$41,750** | **$542,750** |
| **DISBURSEMENTS** | | | | | | | | | | | | | | |
| **Subtotal — W-2 payroll** | **$16,671** | **$5,208** | **$7,571** | **$0** | **$21,879** | **$0** | **$20,279** | **$0** | **$21,439** | **$0** | **$20,279** | **$0** | **$21,439** | **$134,765** |
| **Subtotal — Contract labor** | **$31,587** | **$1,645** | **$31,587** | **$1,645** | **$31,587** | **$1,645** | **$31,587** | **$1,645** | **$31,587** | **$1,645** | **$31,587** | **$1,645** | **$31,587** | **$230,979** |
| **Chapter 11 case costs** | | | | | | | | | | | | | | |
| Appointed Trustee | $0.00 | $3,000 | $0.00 | $0.00 | $0.00 | $3,000 | $0.00 | $0.00 | $0.00 | $3,000 | $0 | $0 | $3,000 | |
| Sinoberg Raft Law counsel — retainer | $0.00 | $3,250 | $0.00 | $0.00 | $0.00 | $3,250 | $0.00 | $0.00 | $0.00 | $3,250 | $0 | $0 | $2,000 | $11,750 |
| Hirschler Law counsel — retainer | **$0** | $3,250 | $0.00 | $0.00 | $0.00 | $3,250 | $0.00 | $0.00 | $0.00 | $3,250 | $0 | $0 | $5,000 | $14,750 |
| **Subtotal — Chapter 11 case costs** | **$0** | **$9,500** | **$0** | **$0** | **$0** | **$9,500** | **$0** | **$0** | **$0** | **$9,500** | **$0** | **$0** | **$10,000** | **$38,500** |
| **Commercial Office & Rent** | | | | | | | | | | | | | | |
| Commercial Lease — Office Space | $0 | $8,350 | $0 | $0 | $8,350 | $0 | $0 | $0 | $8,350 | $0 | $0 | $0 | $8,350 | $33,400 |
| **Subtotal — Rent** | **$0** | **$8,350** | **$0** | **$0** | **$8,350** | **$0** | **$0** | **$0** | **$8,350** | **$0** | **$0** | **$0** | **$8,350** | **$33,400** |
| **Software** | | | | | | | | | | | | | | |
| Emails | $0 | $1,169 | $0 | $0 | $0 | $1,169 | $0 | $0 | $0 | $1,169 | $0 | $0 | $0 | |
| Internal Coms | $0 | $0 | $0 | $5,825 | $0 | $0 | $0 | $5,825 | $0 | $0 | $0 | $5,825 | $0 | $17,475 |
| EHR | $0 | | $0 | **$12,650** | $0 | $0 | $0 | **$12,650** | $0 | $0 | $0 | **$12,650** | $0 | |
| Phones | $0 | $0 | $0 | **$1,800** | $0 | $0 | $0 | **$1,800** | $0 | $0 | $0 | **$1,800** | $0 | |
| Misc Softwares | **$0** | **$250** | **$250** | **$250** | **$250** | **$250** | **$250** | **$250** | **$250** | **$250** | **$250** | **$250** | **$250** | |
| **Subtotal — Software** | **$0** | **$250** | **$250** | **$20,525** | **$250** | **$250** | **$250** | **$20,525** | **$250** | **$250** | **$250** | **$20,525** | **$250** | **$63,825** |
| **Insurance** | | | | | | | | | | | | | | |
| Group Health Insurance | 0 | $0 | $4,284 | $0 | $0 | $0 | $4,284 | $0 | $0 | $0 | $4,284 | $0 | $0 | $12,853 |
| Vehicle Lease & Commercial Insurance | $2,175.00 | $0 | $385 | $0 | $2,175.00 | $0 | $385 | $0 | $2,175.00 | $0 | $385 | $0 | $2,175.00 | $7,680 |
| **Subtotal — Vehicle Expense** | **$2,175** | **$0** | **$4,669** | **$0** | **$2,175** | **$0** | **$4,669** | **$0** | **$2,175** | **$0** | **$4,669** | **$0** | **$2,175** | **$20,533** |
| **Utilities** | | | | | | | | | | | | | | |
| Internet & Smeco | 0 | $1,128 | $0 | $0 | $1,128 | $0 | $0 | $1,128 | $0 | $0 | $1,128 | $0 | $0 | $4,512 |
| **Subtotal — Utilities** | **$0** | **$1,128** | **$0** | **$0** | **$1,128** | **$0** | **$0** | **$1,128** | **$0** | **$0** | **$1,128** | **$0** | **$0** | **$4,512** |
| **Other operating costs** | | | | | | | | | | | | | | |
| Nixon - Laundry Services | $0 | $1,200 | $0 | $0 | $0 | $1,200 | $0 | $0 | $0 | $1,200 | $0 | $0 | $0 | |
| Marketing & Advertising | $923 | $923 | $923 | $923 | $923 | $923 | $923 | $923 | $923 | $923 | $923 | $923 | $923 | $11,077 |
| Supplies, Bank Charges & Admin | $306 | $306 | $306 | $306 | $306 | $306 | $306 | $306 | $306 | $306 | $306 | $306 | $306 | $3,668 |
| **Subtotal — Other operating costs** | **$1,229** | **$1,229** | **$1,229** | **$1,229** | **$1,229** | **$2,429** | **$1,229** | **$1,229** | **$1,229** | **$2,429** | **$1,229** | **$1,229** | **$1,229** | **$18,373** |
| **TOTAL DISBURSEMENTS** | **$51,662** | **$27,310** | **$45,306** | **$23,399** | **$66,598** | **$13,824** | **$58,014** | **$24,527** | **$65,030** | **$13,824** | **$59,142** | **$23,399** | **$75,030** | **$547,062** |
| **NET CASH FLOW** | **-$9,912** | **$14,440** | **-$3,556** | **$18,351** | **-$24,848** | **$27,926** | **-$16,264** | **$17,223** | **-$23,280** | **$27,926** | **-$17,392** | **$18,351** | **-$33,280** | **-$4,312** |
| **CLOSING CASH** | **$88** | **$14,529** | **$10,973** | **$29,324** | **$4,476** | **$32,403** | **$16,139** | **$33,362** | **$10,082** | **$38,009** | **$20,617** | **$38,968** | **$5,688** | **$5,688** |

# **EXHIBIT B**

**(Proposed Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 26-21281-LSS** |
| **ONE ALKALINE LIFE, LLC,** | ) | **Chapter 11** |
| **Debtor.** | ) | **Subchapter V** |

**INTERIM ORDER (A) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO THE SECURED CREDITORS, (C) SCHEDULING A FINAL HEARING, AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[1] of the Debtor One Alkaline Life, LLC (the "**Debtor**"), for entry of an interim order (this "**Interim Order**") authorizing the use of cash collateral[2] and granting adequate protection; and the Court having jurisdiction to decide the Motion and to enter this Interim Order pursuant to 28 U.S.C. § 1334; and this chapter 11 case having been referred to this Court pursuant to 28 U.S.C. § 157(a); and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided,

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

[2] As used in this Interim Order, "Cash Collateral" means all cash collateral, as defined in section 363(a) of the Bankruptcy Code, held by the Debtor.

consistent with Bankruptcy Rules 2002 and 4001, any applicable Local Bankruptcy Rules and any applicable scheduling order of this Court, such notice being adequate and appropriate under the circumstances; and after notice and a hearing, as defined in section 102 of the Bankruptcy Code; and the Court having determined that the legal and factual bases set forth in the Motion and in the record establish just cause for entry of this Interim Order and include sufficient content to satisfy Bankruptcy Rule 4001(b)(1)(B); and it appearing that entry of this Interim Order on an emergency basis is in the best interests of the Debtor's estate, and that the limited interim relief set forth herein is justified to avoid immediate and irreparable harm to the Debtor's estate; it is hereby **ORDERED** that:

1. The Court finds based on the evidence admitted at the hearing on the Motion that sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2), because the Debtor's estate will be immediately and irreparably harmed in the absence of this Interim Order. Specifically, the Court finds that, if this Interim Order were not to become effective immediately upon its entry, the Debtor's remaining business, which is presently under the management of the Debtor as debtor in possession, would be unable to continue in operation, to make payroll, provide services to its students, and to satisfy other operational needs, all to the detriment of the estate and its stakeholders.

2. The Debtor is hereby authorized to use Cash Collateral in accordance with this Interim Order.

3. The Court finds that the terms set forth in this Interim Order are sufficient to protect the Secured Creditors against diminution of their interests in their respective collateral existing as of the Petition Date (the "**Collateral**"), in which such creditor(s) have a valid, enforceable, non-avoidable interest.

4. Authorization to Use Cash Collateral. The Debtor is hereby authorized to use Cash

Collateral in accordance with this Interim Order from the Petition Date through the Term (as defined herein). The Debtor may use Cash Collateral only to pay the items designated in the Budget attached as Exhibit A.

5. Length of Use of Cash Collateral. The Debtor is authorized to use the Cash Collateral pursuant to the terms of this Interim Order until the earlier of (the **"Term"**): (i) through and including the entry of a final Cash Collateral Order, (ii) the occurrence of an "Event of Default" under Paragraph 9 of this Interim Order (and after expiration of the notice requirements contained therein), or (iii) the indefeasible payment in full of all indebtedness due and owing to the Secured Creditors. Upon conclusion of the Term, the Debtor's right to use Cash Collateral shall cease and terminate immediately, without further notice. The Debtor and the Secured Creditors may extend the Term by submitting an agreed order that is entered by this Court, and nothing in this Paragraph 5 shall prohibit the Debtor from seeking to extend the Term by order of this Court.

6. Adequate Protection. In consideration for the use of the Cash Collateral by the Debtor and as part of the adequate protection for any diminution in the value of a Secured Creditor's interest in its Cash Collateral, pursuant to Sections 361, 363 and 552 of the Bankruptcy Code (an **"Adequate Protection Claim"**), the Debtor hereby grants to the Secured Creditors replacement liens in all assets of the Debtor, which are or have been acquired, generated or received by the Debtor subsequent to the Petition Date, and proceeds thereof, to the same extent, priority and validity as their pre-petition liens (if any) to the extent that the Debtor's use of the Cash Collateral results in a decrease in the value of a Secured Creditor's interest in the Cash Collateral (the "**Adequate Protection Liens**"). The Debtor shall maintain the value of the business as a going concern, pending reorganization or sale, in accordance with the Motion and the Budget.

7. Insurance. The Debtor shall maintain insurance on its business assets subject to any

liens and Adequate Protection Liens in amounts not less than what it held prior to the Petition Date.

8. Reporting and Access. The Debtor shall provide such information that the Secured Creditors may reasonably request concerning the Debtor's operations and expenditures. Upon twenty-four (24) hours' notice, the Debtor shall permit the Secured Creditors to inspect any or all of its Collateral.

9. Event of Default. An event of default shall have occurred under this Interim Order **("Event of Default"**) if: (i) the Debtor fails to maintain appropriate insurance; (ii) the Debtor fails to pay the utilities at its business and, as a result thereof, the utilities are shut off; (iii) the Debtor materially fails to perform any duty or obligation under this Interim Order; (iv) the Debtor discontinues or is ordered to discontinue the conduct of its business in the ordinary course; (v) this case is converted to a chapter 7 case under the Bankruptcy Code; (vi) a trustee, other than the previously appointed subchapter V trustee, is appointed under any chapter of the Bankruptcy Code; (vii) the Debtor seeks to enter into new loans or debtor in possession financing, except upon consent of the Secured Creditors or approval of the Court; (viii) the Debtor grants or permits any liens to be placed on any of the Collateral without the Secured Creditors' prior written consent or approval of the Court; (ix) the automatic stay provided in section 362 of the Bankruptcy Code, as it relates to the Collateral of the Secured Creditors shall be terminated, annulled, modified or conditioned in favor of any other creditor; or (x) the Court shall determine after notice and hearing that the Debtor shall not have sufficient cash or Cash Collateral available for it to continue its business operations in the ordinary course.

10. Relief Upon an Event of Default. If an Event of Default shall occur under the terms of this Interim Order, the Debtor shall have five (5) business days to cure the Event of Default, if curable, after receiving notice of the Event of Default by a Secured Creditor via email to the Debtor's counsel. If the Debtor fails to cure the Event of Default within five (5) business days,

the Debtor shall no longer be authorized to use the Cash Collateral.

11. Continuation of Security Interest and Liens. All liens and security interests granted or continued in this Interim Order shall be deemed effective, valid and perfected as of the Petition Date, without the necessity of the filing or lodging by or with any entity of any documents or instruments otherwise required to be filed or lodged under applicable non-bankruptcy law. This Interim Order shall be deemed to be a security agreement for purposes of creation, attachment and perfection of the liens on and the security interests in, to and against the Post-Petition Collateral.

12. Terms of Plan and Reservation of Rights. The terms and provisions of this Interim Order shall not be deemed to be or construed as any of the Secured Creditors' acceptance of any plan of reorganization or liquidation submitted by the Debtor and shall not be in derogation of any other rights possessed by the Secured Creditors under all applicable provisions of the Bankruptcy Code.

13. Successors and Assigns. The provisions of this Interim Order shall inure to the benefit of the Debtor and the Secured Creditors, their successors and assigns and shall be binding upon the successors and assigns of the Debtor and the Secured Creditors.

14. Rights After the End of the Term. The obligations of the Debtor, the rights, claims and security interests of the Secured Creditors existing prior to the Petition Date and granted herein pursuant to this Interim Order shall remain unimpaired and unaffected by any such termination of this Interim Order and shall survive any such termination.

15. No Additional Adequate Protection. Except as stated in this Interim Order, the Court has found that no additional adequate protection is required at this time. The Secured Creditors reserve the right to request different or additional adequate protection from this Court.

16. 6004(h) Waiver. If and to the extent that Federal Rule of Bankruptcy Procedure 6004(h) applies to this Interim Order, the 14-day stay provided by that rule is waived.

17. For the avoidance of doubt, Adequate Protection Liens shall not extend to any causes of action under chapter 5 of the Bankruptcy Code or similar law (each such action, an "**Avoidance Action**"), to any proceeds of an Avoidance Action, or to any property that is recovered or unencumbered as the result of an Avoidance Action.

18. Without limiting the automatic stay of section 362 of the Bankruptcy Code, the Secured Creditors shall take no action that has the effect of impairing or is intended to impair the Debtor's rights or practical ability to receive payment on account of any prepetition or post-petition receivables, including by directing any payment processor to freeze any account or to transfer any funds to the Secured Creditors. Regardless of any notice presented by the Secured Creditors to date or in the future, the Debtor's payment processors are authorized and directed to pay to the Debtor the full amount of all prepetition and post-petition receivables as they become payable to the Debtor in the ordinary course of business, subject to the ordinary-course withholding of transaction fees.

19. Nothing in the Motion or this Interim Order (a) constitutes a finding or ruling that any purported security interest or other purported interest in property is valid, senior, enforceable, prior, perfected or non-avoidable, or that any claim is valid, enforceable or non-avoidable, (b) shall prejudice the rights of any party (including the Debtor) to (i) challenge the validity, priority, enforceability, seniority, perfection or extent of any such security interest, property interest or claim or (ii) seek to avoid or recharacterize any such interest or claim, (c) shall be understood to lift or alter the automatic stay with respect to the Collateral, or (d) shall limit the rights of the Debtor to seek further use of Cash Collateral on any terms and conditions.

20. Except as explicitly provided, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holders or other person.

21. The Debtor and its agents are authorized to take all steps necessary or appropriate to carry out this Interim Order.

22. The final hearing on the Motion shall be held on ________, 2026, at _____ (ET). The Debtor shall promptly mail copies of this Order (which shall constitute adequate notice of the final hearing) to those parties having been given notice of the emergency interim hearing on the Motion, any other person required by applicable rules of bankruptcy procedure to receive such notice, and to any other party that has filed a request for notices with this Court. Any party-in-interest objecting to the relief sought at the final hearing shall serve and file written objections, which objections shall be served upon: (a) Lawrence A. Katz, Hirschler Fleischer, P.C., 1676 International Drive, Suite 1350, Tysons, VA 22102; (b) the Subchapter V Trustee:_______; and (c) the Office of the United States Trustee, 6305 Ivy Lane, Suite 600, Greenbelt, Maryland 20770, and shall be filed with the Clerk of the United States Bankruptcy Court, in each case to allow actual receipt by the foregoing no later than _____, 2026.

23. The Court will retain jurisdiction over all matters arising from or related to the implementation, interpretation or enforcement of this Interim Order.

Copies to:
Lawrence A. Katz (via ECF)
US Trustee – Greenbelt (via ECF)
John Colan (via ECF)

**END OF ORDER**

24992565.2 052046.00001